# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re<br><br>DONNA R. THOMPSON,<br><br>    Debtor. | Case No. 18-32609–BPC<br>Chapter 13 |

| | |
|---|---|
| In re<br><br>KISHA YVONNE DANIEL,<br><br>    Debtor. | Case No. 18-33069–BPC<br>Chapter 13 |

## MEMORANDUM OPINION

These cases are before the Court on the Amended Motion for Relief from Stay in *In re Donna R. Thompson*, Case No. 18-32609, and the Motion to Confirm Termination or Absence of Stay in *In re Kisha Yvonne Daniel*, Case No. 18-33069 (collectively, the "Motions") filed by TitleMax of Alabama, Inc. ("TitleMax"). These chapter 13 cases concern the overlapping question of whether the pawn transactions at issue are invalid under the Alabama Pawnshop Act, ALA. CODE §§ 5-19A-1 through 5-19A-20 (the "Pawnshop Act"), due to TitleMax's failure to take into its possession endorsed certificates of title and copies of the vehicle keys when it entered into the pawn agreements. Alternatively, these cases concern whether factual nuances in each of the cases void the respective pawn transactions. The Court conducted separate evidentiary hearings, and the parties submitted consolidated post-hearing briefs on August 2, 2019. For the reasons set forth below, the Motions are hereby GRANTED.

## I. JURISDICTION

This Court has jurisdiction to hear these matters pursuant to 28 U.S.C. § 1334(b). These are core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(G). This is a final order.

## II. FACTS AND PROCEDURAL HISTORY

### A. *In re Donna R. Thompson* -- Case No. 18-32609

#### i. Findings of Fact

On June 22, 2012, Donna R. Thompson ("Thompson") entered into a title pawn loan transaction by which she borrowed $4,000 from TitleMax. This transaction is evidenced by a pawn ticket dated June 22, 2012 with a maturity date of July 22, 2012 (Thompson, DR's Ex. 2). As part of the transaction, Thompson provided TitleMax with the certificate of title to a 2003 Nissan Xterra (the "2003 Nissan"). The certificate of title identifies TitleMax as the first and only lienholder (Thompson, DR's Ex. 1). Thompson retained possession of the 2003 Nissan.

From June 22, 2012 through September 1, 2018, Thompson executed multiple renewals of the pawn ticket. Thompson renewed the pawn ticket on January 4, 2016 and again on March 16, 2016 (Thompson, DR's Exs. 3 and 4). TitleMax could not produce an executed renewal pawn ticket for the 72-day period between January 4, 2016 and March 16, 2016. During this period, Thompson paid TitleMax $393.05 on January 4, 2016; $379.95 on February 2, 2016; and $393.05 on March 16, 2016 (Thompson, DR's Ex. 5; TitleMax's Ex. 4).

Thompson entered into her last renewal of the pawn ticket on September 1, 2018. This renewal is supported by a pawn ticket which states that $4,324.09 is due on or before the maturity date of October 1, 2018 (Thompson, TitleMax's Ex. 1). To date, Thompson has not paid TitleMax the payment of $4,324.09.

### ii. Procedural History

On September 14, 2018, Thompson filed her chapter 13 petition with this Court. In her initial chapter 13 plan, Thompson proposed to pay TitleMax for the 2003 Nissan over the term of the plan. On November 15, 2018, TitleMax objected to confirmation of the proposed plan. The objection asserted that: (i) the 2003 Nissan was forfeited to TitleMax on November 14, 2018 since Thompson did not redeem within the required statutory period under § 108(b) of the Bankruptcy Code, and (ii) Thompson could not extend the redemption period of her pawn agreement over the life of her chapter 13 case. On January 16, 2019, TitleMax filed its Amended Motion for Relief from Stay asserting the same general arguments set forth in its objection to plan confirmation. Thompson subsequently amended her schedules to dispute the claim of TitleMax and filed an amended plan removing any payments to TitleMax, thereby mooting TitleMax's objection to plan confirmation. An evidentiary hearing on the Motion was held on April 18, 2019.

### B. *In re Kisha Yvonne Daniel* -- Case No. 18-33069

#### i. Findings of Fact

On February 15, 2017, Kisha Yvonne Daniel ("Daniel" and collectively with Thompson, "Debtors") entered into a title pawn loan transaction by which she borrowed $1,912.00 from TitleMax. This transaction is evidenced by a pawn ticket dated February 15, 2017 with a maturity date of March 17, 2017 (Daniel, DR's Ex. 1). As part of this transaction, Daniel provided TitleMax with the certificate of title to a 2004 Ford Explorer (the "2004 Ford"). The certificate of title identifies TitleMax as the first and only lienholder (Daniel, DR's Ex. 31). Daniel retained possession of the 2004 Ford.

Daniel does not dispute that she executed the pawn ticket dated February 15, 2017 or that she renewed the pawn transaction on March 16, 2017. However, after the March 16, 2017 transaction, there are twelve pawn tickets that do not contain Daniel's handwritten signature. Daniel testified that she did not authorize anyone to sign these renewals on her behalf. These disputed pawn tickets are dated April 18, 2017; June 13, 2017; July 27, 2017; August 31, 2017; October 13, 2017; January 5, 2018; February 14, 2018; March 14, 2018; April 20, 2018; May 18, 2018; and June 27, 2018 (Daniel, DR's Exs. 3-7, 9-15). Daniel's handwritten signature is on the pawn ticket dated November 29, 2017 (Daniel, DR's Ex. 8). The signatures on the disputed pawn tickets are identical and appear to be computer-generated signatures. TitleMax has "DocuSign" technology in its stores to support computer generated electronic signatures on pawn tickets and receipts, but its use of electronic signatures is generally limited to customers who are physically unable to sign pawn tickets. At the time the disputed pawn tickets were executed, Daniel was physically able to sign the pawn tickets.

Daniel made payments to TitleMax on March 16, 2017; April 18, 2017; June 13, 2017; July 27, 2017; August 31, 2017; October 13, 2017; November 29, 2017; January 5, 2018; February 14, 2018; March 14, 2018; April 20, 2018; May 18, 2018; June 27, 2018; and August 25, 2018 (Daniel, DR's Exs. 16-29). The last renewal pawn ticket is dated August 25, 2018 (Daniel, DR's Ex. 15). This pawn ticket states that $2,152.61 is due on or before the maturity date of September 24, 2018. To date, Daniel has not paid TitleMax the payment of $2,152.61.

    **ii.    Procedural History**

On October 26, 2018, Daniel filed her chapter 13 petition with this Court. In her initial chapter 13 plan, Daniel proposed to pay TitleMax for the 2004 Ford over the term of the plan. On November 14, 2018, TitleMax objected to the plan. The objection asserted that (i)

the 2004 Ford was forfeited to TitleMax prepetition on October 24, 2018 since Daniel did not redeem the vehicle within the time period set forth in the pawn ticket, and (ii) Daniel could not extend the redemption period of her pawn agreement over the life of her chapter 13 case. On February 11, 2019, TitleMax filed its Motion to Confirm the Termination or Absence of the Stay asserting that the 2004 Ford was not protected by the automatic stay based on the same arguments set forth in the objection to plan confirmation. On May 30, 2018, Daniel amended her schedules to dispute the claim of TitleMax and filed an amended plan removing any payments to TitleMax, thereby mooting TitleMax's objection to plan confirmation. An evidentiary hearing on the Motion was held on May 30, 2019.

    C.    **Overview of Arguments Presented**

TitleMax argues that the vehicles are not property of Debtors' estates or subject to the protections of the automatic stay based on Debtors' failure to redeem within the contractual and/or statutory redemption periods. Specifically, TitleMax argues that Thompson did not redeem the 2003 Nissan within the required 60-day redemption period under § 108(b) of the Bankruptcy Code, and Daniel did not redeem the 2004 Ford within the contractual redemption period as set forth in the pawn agreement and as allowed under the Pawnshop Act.

In response, Debtors argue that the pawn transactions are invalid because TitleMax failed to take constructive possession of the vehicles when entering into the initial pawn transactions since it did not take possession of an endorsed certificate of title and set of keys to the vehicles. Alternatively, Debtors argue that if the pawn transactions are valid, there are factual nuances in each case that void the transactions. Thompson argues that because TitleMax failed to produce a pawn ticket dated between January 4, 2016 and March 16, 2016, all renewals subsequent to the March 16, 2016 transaction are void because TitleMax failed to

maintain records as required under § 5-19A-8(3) of the Pawnshop Act.[1] Thompson further argues that because she did not renew or enter into a new pawn transaction with TitleMax in February 2016, more than 60 days passed between the January 4, 2016 transaction and the renewal on March 16, 2016, which resulted in an automatic forfeiture of the 2003 Nissan to TitleMax under § 5-19A-6 of the Pawnshop Act.[2] Similarly, Daniel argues that the pawn tickets containing a computer-generated signature are invalid. If invalid, more than 60 days passed from the March 16, 2017 pawn transaction without Daniel renewing the pawn agreement, and this lapse resulted in an automatic forfeiture of the 2004 Ford to TitleMax. Debtors argue TitleMax continued to collect fees and charges after the alleged forfeitures in excess of the amount permitted, which rendered the pawn transactions void under § 5-19A-7 of the Pawnshop Act.[3] Alternatively, Debtors contend that the collection of fees and charges

---

[1] ALA. CODE § 5-19A-8 (1975):

> A pawnbroker, any clerk, agent, or employee of a pawnbroker shall not do any of the following: . . . (3) Falsify, obliterate, destroy, or remove from the place of business records, books, or accounts relating to the licensee's pawn transactions.

[2] ALA. CODE § 5-19A-6 (1975):

> A pledgor shall have no obligation to redeem pledged goods or make any payment on a pawn transaction. Pledged goods not redeemed within 30 days following the originally fixed maturity date shall be forfeited to the pawnbroker and absolute right, title, and interest in and to the goods shall vest in the pawnbroker.

[3] ALA. CODE § 5-19A-7 (1975):

> (a) A pawnbroker may contract for and receive a pawnshop charge in lieu of interest or other charges for all services, expenses, costs, and losses of every nature but not to exceed 25 percent of the principal amount, per month, advanced in the pawn transaction.
>
> (b) Any interest, charge, or fees contracted for or received, directly or indirectly, in excess of the amount permitted under subsection (a) shall be uncollectible and the pawn transaction shall be void. The pawnshop charge allowed under subsection (a) shall be deemed earned, due, and owing as of the date of the pawn transaction and a like sum shall be deemed earned, due, and owing on the same day of the succeeding month.

after forfeiture voided the agreements because it was an improper attempt to sell or lease back the vehicles under § 5-19A-8(9) of the Pawnshop Act.[4]

## III. LEGAL ANALYSIS AND CONCLUSIONS OF LAW

### A. The Pawn Transactions are Valid Under Alabama Law.

In both cases, Debtors argue that TitleMax failed to comply with the Pawnshop Act when it failed to take possession of an endorsed certificate of title and set of keys to the vehicles. TitleMax does not dispute that, in both cases, the initial pawn agreements included language requiring Debtors to deliver to TitleMax a certificate of title endorsed in blank and a set of keys to the vehicles. Further, TitleMax does not dispute that Debtors did not comply with this provision of the pawn agreements. If the Pawnshop Act requires an endorsed certificate of title and set of keys in order for the pawn holder to obtain possession of the vehicles, then the transactions were never valid. The Court disagrees.

The Pawnshop Act defines a pawn transaction as "[a]ny loan on the security of pledged good or any purchase of pledged goods on condition that the pledged goods are left with the pawnbroker and may be redeemed or repurchased by the seller for a fixed price within a fixed period of time." ALA. CODE §5-19A-2(3) (1975). Relying on *Floyd v. Title Exch. & Pawn, Inc.*, 620 So. 2d 576 (Ala. 1993), Debtors argue that the only way for TitleMax to have

---

[4] ALA. CODE § 5-19A-7 (1975):

> A pawnbroker, any clerk, agent, or employee of a pawnbroker shall not do any of the following: . . . (9) Sell, lease, or agree to sell or lease pledged or purchased goods back to the pledgor or back to the seller and the same or related transaction.

Case 18-32609 Doc 81 Filed 10/24/19 Entered 10/24/19 12:14:08 Desc Main
Document Page 7 of 15

possession of the vehicles at issue is to hold both an endorsed certificate of title and a set of keys to the vehicles.[5]

In reviewing cases since *Floyd*, the Court is not convinced that it was the Alabama Supreme Court's intent to limit constructive possession of a vehicle to the facts presented in *Floyd*. The issue before the Alabama Supreme Court in *Floyd* was whether a person can pawn an automobile certificate of title while retaining possession of the automobile. *Id*. at 576. As later clarified by the Alabama Supreme Court in *Blackmon v. Downey*, 624 So. 2d 1374 (Ala. 1993), the holding in *Floyd* was that an automobile certificate of title is "tangible personal property" within the meaning of the Pawnshop Act such that money-lending transactions involving the transfer of automobile certificates of title for the purpose of giving security are "pawn" transactions and not "small loan" transactions. *Id*. at 1376. While the facts of *Floyd* were that the debtor provided the pawn holder an endorsed certificate of title and a set of keys, this Court cannot find support for Debtors' position that this is the only way a pawn holder can obtain constructive possession of a vehicle under the Pawnshop Act.

In the case of *Ex parte Coleman*, 861 So. 2d 1080 (2003), the Alabama Supreme Court specifically states that "*Floyd* does not adopt the *Floyd* trial judge's opinion that a pawnbroker's possession of the keys and an endorsed title certificate to a car constitutes the pawnbroker's constructive possession of the car itself." *Id*. at 1086. Moreover, the Bankruptcy Court of this District previously stated, quoting language from *Floyd*, that:

> The Alabama Supreme Court has defined "tangible personal property" in § 5–19A–2(6) as "personal property, palpable, susceptible to the sense of touch, capable of ownership, and endowed with intrinsic value." *Floyd v. Title Exchange & Pawn of Anniston, Inc.,* 620 So. 2d 576, 578 (Ala.1993) (internal

---

[5] *Floyd v. Title Exch. & Pawn, Inc.*, 620 So. 2d at 578 (quoting the trial court's statement that possession of a set of keys and an endorsed certificate of title was sufficient under the Pawnshop Act).

quotation marks omitted). To that end, a certificate of title to an automobile qualifies as "pledged goods" such that its offer as security is sufficient to create a transaction subject to the Alabama Pawnshop Act, even when the pledgor retains possession of the vehicle.

*In re Jones*, 544 B.R. 692, 697 (Bankr. M.D. Ala. 2016).

Here, TitleMax is in possession of the certificates of title to the vehicles and recorded as lienholder on the respective certificates of title. The vehicles are "pledged goods" sufficient to create a transaction subject to the Pawnshop Act even though Debtors retained possession of the vehicles.

      **B.**    ***In re Thompson*: The Absence of the February 2016 Pawn Ticket Does Not Void the Pawn Transactions.**

Thompson argues that TitleMax's failure to produce an executed pawn ticket for the period between January 4, 2016 and March 16, 2016 is a prohibited act under the Pawnshop Act which voids the unproduced pawn ticket and all subsequent renewal agreements. Failure "to maintain a record of each pawn transaction for at least four years" is a prohibited act under the Pawnshop Act. ALA. CODE § 5-19A-8 (1975). While the Court does not condone TitleMax's failure to properly maintain records regarding the pawn transaction at issue, the Court can find no basis in the Pawnshop Act or case law to conclude that a failure to maintain records results in a voidance of the transaction.

The Pawnshop Act specifies only two actions that would void a transaction. *See* ALA. CODE § 5-19A-7(b) (1975) (declaring a transaction void for charging excessive interest); ALA. CODE § 5-19A-13(e) (1975) (declaring a transaction void if made without benefit of a license). The prohibited offenses set forth in § 5-19A-8 of the Pawnshop Act do not receive the same consequence of voiding the transaction. Compliance with the Pawnshop Act is monitored by the Supervisor of the Bureau of Loans of the State Banking Department. *See* ALA. CODE §5-

19A-1(7) and §5-19A-17 (1975). While violations of the Pawnshop Act may be subject to a misdemeanor or suit by the Supervisor, there does not appear to be a civil remedy for customers/pledgors regarding prohibited acts under § 5-19A-8. If the intent of the Alabama Legislature was to provide for voidance of a pawn transaction when a prohibited act occurred, they could have included a similar provision regarding voidance of the pawn transaction in § 5-19A-8 as they did in other sections of the Pawnshop Act. Although TitleMax's failure to produce a pawn ticket for the period of time between January 4, 2016 and March 16, 2016 evidences a disconcerting failure to properly maintain records in accordance with the Pawnshop Act, this failure did not void the pawn transaction between TitleMax and Thompson. *See In re Spinner*, 398 B.R. at 93-94 (noting that certain actions void the transaction pursuant to the Georgia Pawnshop Act, but others are violations that result in a potential misdemeanor).[6]

Additionally, the evidence before the Court does not support a finding that the pawn agreement was not renewed by Thompson between January 4, 2016 and March 16, 2016. The relationship between Thompson and TitleMax began on June 22, 2012. Between June 22, 2012 and Thompson's bankruptcy filing on September 14, 2018, there were numerous pawn transactions between the parties (Thompson, TitleMax's Ex. 4). The transaction history reflects that there was both a payment of $379.95 and a renewed pawn ticket issued on February 3, 2016. *Id*. The parties do not dispute that there were renewed pawn tickets and regular payments made by Thompson to TitleMax every 30 to 60 days for over two years after the January 4, 2016 transaction. Thompson's own response to TitleMax's Motion states that

---

[6] Daniel raised a similar "failure to maintain records" argument regarding an un-reflected payment. She argued that, because TitleMax's transaction history failed to include a payment she made and for which she received a receipt, subsequent renewals should be voided based on the failure to keep and maintain records. As stated herein, such a violation does not void the agreements. Similarly, this argument fails.

Case 18-32609    Doc 81    Filed 10/24/19    Entered 10/24/19 12:14:08    Desc Main
Document      Page 10 of 15

she "maintained an ongoing relationship with TitleMax whereby her vehicle [] was pledged as collateral for the various transactions" and that "[u]pon information and belief, [D]ebtor has renewed some form of pawn transaction for the past 72 months." (Thompson, Doc. 40). At the trial, Thompson was unable to recall making (or not making) some payments, yet she did not dispute that she made a payment to TitleMax on February 3, 2016.

Thompson initially included the debt to TitleMax in her schedules filed with the Court and provided for the payment of TitleMax's debt in her original proposed chapter 13 plan. It was only after TitleMax objected to the plan that she first asserted the argument that the agreements were void based on the contractual language or forfeiture of the vehicle in 2016. Thompson's actions prior to and immediately after the filing of her bankruptcy petition do not exhibit that either party was operating under the assumption that the vehicle had been forfeited to TitleMax in 2016. While an actual forfeiture of the 2003 Nissan and subsequent collection of fees and interest may have resulted in a violation of the Pawnshop Act, the evidence before the Court does not support a finding that the vehicle was forfeited to TitleMax in 2016. Without a forfeiture of the vehicle, Thompson's voidance arguments fail.

    **C.**    ***In re Daniel*: The Computer Generated Signatures on the Pawn Tickets Do Not Void the Pawn Transactions.**

Daniel contends her pawn transactions with TitleMax are void because the disputed pawn tickets do not contain her handwritten signature, and because she did not authorize anyone to execute the renewal pawn tickets on her behalf. The Pawnshop Act requires that "the pledgor or seller shall sign a statement verifying that the pledgor or seller is the rightful owner of the goods or is entitled to sell or pledge the goods and shall receive an exact copy of the pawn ticket which shall be signed or initialed by the pawnbroker or any employee of the

pawnbroker." ALA. CODE § 5-19A-5(a) (1975). The disputed pawn tickets contain computer generated electronic signatures.

The Alabama Uniform Electronic Transaction Act, ALA. CODE §8-1A-1 (1975) ("AUETA"), provides that an electronic signature is attributable to a person if it was the act of the person.[7] "The act of the person may be shown in any manner" and is "determined from the context and surrounding circumstances at the time of its creation, execution, or adoption." *Id*. *See generally Humphrey v. Cheddar's Casual Cafe, Inc.*, 2016 WL 3483168, at *1 (N.D. Ala. June 27, 2016) (finding plaintiff electronically affixed her signature to an agreement where the context and surrounding circumstances attributed the signature to her).

While normally the content of the record will provide the necessary information for a finding of attribution, an insufficiency can be overcome by way of "an established course of dealings between the parties." ALA. CODE § 8-1A-9 (1975), Official Comment, Paragraph 3. Here, the course of dealings between Daniel and TitleMax supports a finding that the electronic signatures on the disputed transactions are valid. Daniel did not dispute the electronic signatures placed on prior pawn tickets when she entered into a renewal of the pawn transaction on November 29, 2017. Debtor did not dispute that the pawn ticket and receipt, both from November 29, 2017, contain Daniel's handwritten signature (Daniel, DR's Exs. 8 and 22). Daniel did not dispute her signature on any of the pawn tickets prior to filing her bankruptcy

---

[7] ALA. CODE § 8-1A-9 (1975):

> (a) An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.

petition. She did not raise any dispute when she filed her petition, schedules, and chapter 13 plan. The first time Daniel disputed the electronic signatures was after TitleMax objected to her plan and moved for a determination that the stay was terminated.

Further, between February 15, 2017 and August 25, 2018, the course of dealings between the parties shows that Daniel made monthly payments to TitleMax on dates that coincide with the dates of the disputed pawn tickets. Daniel testified that she made these payments because her understanding was that the initial contract required her to go in every 30 days and make a payment. However, there is no provision in the February 15, 2017 pawn agreement requiring Daniel to go in every 30 days to make a payment. Even if this was her understanding of the contract, the payment history reflects numerous occasions where Daniel made payments outside the 30-day maturity window but before the end of the 60-day grace period. Daniel's argument that she did not assent to the pawn ticket renewals or intend to enter into the pawn agreements is not convincing when her testimony and the record reflect that she continued to make payments and otherwise perform in accordance with the agreements. The course of business between TitleMax and Daniel is sufficient to attribute the electronic signatures on the disputed pawn transactions to Daniel. As such, there was no forfeiture of the 2004 Ford to TitleMax prior to Daniel's bankruptcy, and without a forfeiture of the vehicle, Daniel's voidance arguments fail.

### D. The Vehicles are Not Property of Debtors' Bankruptcy Estates.

Section 541(a) describes property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Whether a debtor's interest constitutes property of the estate is a federal question, but bankruptcy courts look to state law to decide whether the debtor had a legal or equitable interest in the property

as of the petition date. *In re Thomas*, 516 F. App'x 875, 877 (11th Cir. 2013). However, the bankruptcy estate (when defined) is "not necessarily 'frozen in time,' but rather can, in certain circumstances, expand or contract in accordance with the operation of underlying state-law property rules." *In re Northington*, 876 F.3d 1302, 1314 (11th Cir. 2017).

It is well established that "a Chapter 13 plan cannot be used to revive a debtor's right to redeem pawned property once the statutory redemption period has expired." *In re Paul*, 534 B.R. 430, 433 (Bankr. M.D. Ga. 2015); *Dunlap v. Cash AM. Pawn of Nashville*, 158 B.R. 724, 728; *USA Title Pawn v. Askew*, 507 B.R. 394, 399 (Bankr. N.D. Ga. 2014). In circumstances where a default occurs and the redemption period expires pre-petition, the pawned vehicle does not become property of the estate. Yet, if redemption rights still exist as of the bankruptcy filing, the Bankruptcy Code extends the redemption period 60 days from the petition date. 11 U.S.C. § 108(b)(2); *In re Bramlett*, 483 B.R. 244, 246 (Bankr. N.D. Ala. 2012) ("If a debtor's redemption rights have not expired at the time of filing, . . . the provisions of 11 U.S.C. § 108(b) extend the time for redemption for 60 days after the filing date of the petition."). A debtor's right of redemption is property of the estate. *See In re Lewis*, 137 F.3d 1280, 1284 (11th Cir. 1998); *In re Jones*, 544 B.R. at 700; *In re Bramlett*, 483 B.R. at 246 ("Section 362(a) does not further toll the running of the redemption period.").

In these cases, the vehicles either never were property of Debtors' estates because the redemption period ended prior to bankruptcy, or the right of redemption "dropped out" of the estate at the conclusion of the extended redemption period provided by § 108(b) of the Bankruptcy Code. Specifically, Thompson's last pawn ticket renewal was dated September 1, 2018 with a maturity date of October 1, 2019. She filed her bankruptcy petition on September 14, 2018, which extended her redemption period under the pawn ticket to November 14, 2018

(or 60 days from her petition date). Thompson failed to pay TitleMax $4,324.09 by this date in order to redeem the 2003 Nissan. As a result, Thompson's redemption period expired, and the right of redemption dropped out of Thompson's estate. In Daniel's case, the last pawn ticket renewal was dated August 25, 2018 with a maturity date of September 24, 2018. Based on the 30-day grace period provided by the pawn ticket and the Pawnshop Act, Daniel had until October 24, 2018 to redeem the vehicle. Daniel failed to pay TitleMax $2,152.61 by that date. The redemption period expired on October 24, 2018, prior to her filing her bankruptcy petition on October 26, 2018. Accordingly, neither the 2004 Ford or any redemption interest in that vehicle ever became part of Daniel's bankruptcy estate. In both cases, Debtors failed to timely redeem the vehicles such that they are not property of the estate and are not protected by the automatic stay. *See In re Northington*, 876 F.3d at 1314; *In re Bramlett*, 483 B.R. at 246.

## IV. CONCLUSION

Based on the foregoing, TitleMax's Motions in the respective cases are due to be GRANTED. Separate orders will enter accordingly.

Done this 24th day of October, 2019.

Bess M. Parrish Creswell
United States Bankruptcy Judge

c: Debtor
Michael Brock, Attorney for Debtor
David A. Butler, Attorney for TitleMax
TitleMax, Creditor